[No. 8593.]

HOTTER v. KIMSEY ET AL.

1. WATER RIGHTS—*Acquired Separate From Land.* A right to the use of water for irrigation may be acquired separate and apart from any lands.

A settler upon public lands not open to his settlement, constructed a ditch and diverted water for the irrigation thereof. He afterwards acquired other lands upon the same stream. A decree awarding him priority as of the date of his original appropriation was affirmed.

One who acquires a parcel of land to which a prior settler thereon, without right, has diverted water, is not entitled to avail himself of the appropriation made by prior settler.

2. APPEAL AND ERROR—*Finding on Conflicting Evidence,* will not be disturbed.

*Error to La Plata District Court.* Hon. WILLIAM N. SEARCY, Judge.

Messrs. McCLOSKEY & MOODY, for plaintiff in error.

Messrs. RUSSELL & REESE, for defendants in error.

Mr. JUSTICE HILL delivered the opinion of the court.

This is a supplemental proceeding for the adjudication of water rights, in which the plaintiff in error contends, that his ditch, known as The Hay Gulch Waste Water Ditch, awarded Priority No. 6 on Hay Gulch as

of date May 1, 1900, etc., should have its award dated as of May, 1897, and of an earlier date than the Naranjo Ditch, awarded Priority No. 4 as of date June 10, 1900, and the White, Roux and Owen Ditch, awarded Priority No. 5 as of date October the 5th, 1899.

The contention is that The Hay Gulch Waste Water Ditch's priority should antedate those of the others, and that in this respect, the decree is not sustained by the evidence.

There is testimony, that The Hay Gulch Waste Water Ditch is used in the irrigation of about one hundred sixty acres of land in what was formerly part of the Ute reservation, which was opened to settlement May 4, 1899, at which time Hans Aspaas made homestead filing upon this land, and, thereafter took possession; that at the time of his filing he found one Manuel Naranjo in possession; that Naranjo, alone, or with a son, had leased it from a Ute Indian, who thought he was entitled to it by allotment until after the opening, when it was ascertained he was not, but in lieu thereof it was subject to filing; that during the spring of 1898 the Naranjos, who were then in possession under an agreement with the Indian, constructed a small ditch out of this stream, running to this land by which, during 1898 and 1899, they irrigated a small portion of it, up to about thirty acres, in 1899, which was mostly in small grain; that after Aspaas filed in 1899, he notified the Naranjos to that effect, and that he claimed the right to possession, etc., which was the first information they had that the Indian was without right; that after a conference concerning it, he, Aspaas, allowed the Naranjos to remain on it until they had harvested their crops; that he paid Manuel Naranjo and the Ute Indian for the improvements Eighty or One Hundred Dollars, one-half to each. His testimony is to the effect that this included

the water privileges secured by virtue of the construction of this little ditch, and the application of the waters to this land, but this testimony is flatly contradicted by the son, Joseph Naranjo, who testified that it did not include the water, and his testimony and others is to the effect that after they left this place, which they had hoped to file upon, they went about a mile below it, where the father filed upon another piece of land, and during 1900 they constructed the Naranjo ditch for the lands filed upon by the father, and irrigated a part of it that year from this same stream. The testimony of Joseph Naranjo is that they intended to use the same water privileges which they had theretofore acquired and used upon the upper place, for this place, and that they did use the water from the same little stream upon the lower land in 1900, and continued so to do thereafter. The testimony discloses that thereafter Mr. Aspaas built an additional ditch for his land, locating a part of it and the headgate further up the stream than the one built by the Naranjos; that he thereafter used a part of that built by the Naranjos, and that constructed by him for applying the water to the irrigation of his land, but this was after the construction and use of the Naranjo ditch, so that in order for his priority to antedate the Naranjo ditch's it is necessary for him to rely upon the acts of the Naranjos and the Ute Indian in the cultivation and irrigation of his land prior to the time he had any interest therein, and when the interest thereafter acquired by him was hostile to theirs. This contention cannot prevail. In this jurisdiction a water right can be acquired separate and apart from the land.—*Daum v. Conley*, 27 Colo. 56, 59 Pac. 753; *Cooper v. Shannon*, 36 Colo. 98, 85 Pac. 175, 118 Am. St. 95.

In the absence of evidence to that effect, it cannot be said that by the construction of a small ditch and the

irrigation of the land, that the Naranjos (who were operating by supposed permission from a Ute Indian, who they thought owned the land) intended to acquire and attach to it a water right for the benefit of a person then unknown to them, who later took the land from both by filing a homestead thereon, etc.—*Sponsel v. Schaeffer,* 61 Colo. 576, 158 Pac. 715.

Counsel's next contention is that the water privileges thus acquired were purchased from the Indian and Manuel Naranjo. This is based upon the testimony of Mr. Aspaas, but who admits there was no writing, and no bill of sale even for the improvements which he purchased. His testimony in this respect is flatly contradicted by the son, Joe Naranjo. Likewise, there is testimony that the Naranjos thereafter used this right, or at least the waters coming from the same little stream, during the years following upon the land covered by the father's filing. There being a substantial conflict in the evidence concerning this matter, it was the province of the trial court to determine it. This it did against the contention of the plaintiff in error, which is binding upon this court.

Perceiving no prejudicial error, the judgment is affirmed.

*Affirmed.*

Mr. JUSTICE WHITE and Mr. JUSTICE TELLER concur.